IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GEORGIA GAMING INVESTMENT, LLC, and TENNESSEE HOLDING INVESTMENTS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO TITLE AND TRUST COMPANY, <br><br> Defendant, <br><br> and <br><br> CHICAGO TITLE AND TRUST COMPANY, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> THE PORTER CASINO RESORT, INC. <br><br> Third-Party Defendant. | No. 20-cv-2882-SHM |

## ORDER GRANTING CHICAGO TITLE'S MOTION TO DISMISS

This is a third-party beneficiary action alleging breach of contract. Before the Court is Defendant Chicago Title and Trust Company's ("Chicago Title") December 15, 2020 Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim (the "Motion"). (D.E. No. 9.) Plaintiffs Georgia Gaming Investment, LLC and Tennessee Holding

Investments, LLC ("Plaintiffs") responded on February 1, 2021. (D.E. No. 17.)  Chicago Title replied on February 15, 2021. (D.E. No. 21.)  For the following reasons, the Motion is **GRANTED**.

## I.  Background

This case arises from The Porter Casino Resort, Inc.'s, ("Porter Casino") attempt to purchase a casino in Mississippi from The Majestic Star Casino, LLC ("Majestic Star").  Plaintiffs assert a single claim of breach of contract, contending that they are third-party beneficiaries of the Escrow Agreement among Porter Casino, Majestic Star, and Chicago Title.  (D.E. No. 1-4, ¶ 15.)

Georgia Gaming Investment, LLC ("Georgia Gaming") is a Georgia limited liability company with its principal place of business in Norcross, Georgia.  (Id. ¶ 1.)  Georgia Gaming's two members are Sandip Patel and Shiraz Saleem, both residents of Georgia.  (D.E. No. 1-1, ¶¶ 5-8.)  Tennessee Holding Investments, LLC ("Tennessee Holding") is a Georgia limited liability company with its principal place of business in Ringgold, Georgia.  (D.E. No. 1-4, ¶ 2.)  The sole member of Tennessee Holding is Harshad Patel, a resident of Georgia.  (D.E. No. 1-3, ¶ 5-6.) Porter Casino is a Tennessee corporation. (D.E. No. 10, 2.) Majestic Star is an Indiana limited liability company.  (Id.)  Chicago Title is an Illinois corporation.  (D.E. No. 1-4, ¶ 3.)  Its principal place of business is in Florida.  (D.E. No. 1-3, ¶ 6.)

Plaintiffs entered into an investment agreement with Porter Casino to invest up to $3,000,000.00 in Porter Casino. (D.E. No. 1-4, ¶ 6.) An Escrow Agreement was executed among Porter Casino, Majestic Star, and Chicago Title. (Id. ¶ 9.) Plaintiffs transferred $1,500,000.00 on behalf of Porter Casino to Chicago Title on September 15, 2017. (D.E. No. 11, ¶ 8.) Plaintiffs were not parties to the Escrow Agreement.

Plaintiffs became concerned about Porter Casino's ability to meet the conditions of the investment agreement and asked that their money be refunded. (D.E. No. 1-4, ¶ 10.) On November 30, 2017, Porter Casino and Plaintiffs entered into a Termination Agreement to refund Plaintiffs' money. (Id. ¶ 11.) On February 9, 2018, Plaintiffs sent written notice to Chicago Title requesting the refund of the money in escrow and objecting to the money being paid to Porter Casino. (Id. ¶ 12.) Chicago Title disbursed the funds to Porter Casino on February 20, 2018. (Id. ¶ 13.)

Porter Casino is suing Plaintiffs in a separate case in this Court. The Porter Casino Resort, Inc. v. Georgia Gaming Investment, LLC, et al., Docket No. 18-cv-2231. Plaintiffs initially filed a Third-Party Complaint against Chicago Title in that case. (Id. at D.E. No. 51.) Chicago Title filed a Motion to Dismiss because the Third-Party Complaint was not dependent on the outcome of Porter Casino's claims against Plaintiffs.

(Id. at D.E. No. 53.)  The Court granted the Motion.  (Id. at D.E. No. 68.)  Other claims in that case are pending before the Court.

Plaintiffs then sued Chicago Title in state court in Georgia.  (See D.E. No. 10, 5.)  Chicago Title removed the case to the Northern District of Georgia.  (Id.)  Chicago Title filed a Motion to Dismiss for lack of personal jurisdiction.  (Id.) Plaintiffs voluntarily dismissed the case without prejudice. (Id.)  Plaintiffs then filed suit in the Chancery Court of Shelby County, Tennessee.  (D.E. No. 1, ¶ 1.)  Chicago Title removed to this Court.  (Id.)

## II.  Jurisdiction and Choice of Law

The Court has subject-matter jurisdiction under 28 U.S.C. § 1332.  The parties are diverse.  Chicago Title is an Illinois corporation with its principal place of business in Florida. Plaintiffs are Georgia entities.  All of their members reside in Georgia.  Plaintiffs seek more than $75,000 in damages.

To determine personal jurisdiction, the Court applies the substantive law of the forum state.  CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  Tennessee law governs whether the Court has personal jurisdiction over Chicago Title.

## III. Standard of Review

Motions to dismiss for lack of personal jurisdiction are considered under a "procedural scheme" that is "well-settled." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff at all times bears the burden of establishing that the court has personal jurisdiction over the defendant. Id. "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." Id. (citation omitted). When a court bases its decision on supporting and opposing affidavits without an evidentiary hearing, "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." Id. "[T]he court must . . . view affidavits, pleadings, and documentary evidence in the light most favorable to the plaintiff." Kerry Steel v. Paragon Indus., Inc., 106 F.3d 147, 153 (6th Cir. 1997). This does not require the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." Id. The court "does not weigh the controverting assertions of the party seeking dismissal." Theunissen, 935 F.2d at 1459.

## IV.  Analysis

### A.  Personal Jurisdiction

Fourteenth Amendment due process determines whether a court may exercise personal jurisdiction over a defendant.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011). A court must have personal jurisdiction.  Air Prod. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007). There are two forms of personal jurisdiction, general and specific.  Id. at 549-550.

#### 1.  General Jurisdiction

A court has general jurisdiction over a defendant and may hear all claims against it when the defendant's connections to the forum state are "continuous and systematic" so that it is essentially "at home" in the state.  Goodyear, 564 U.S. at 919. A court ordinarily has general jurisdiction over a corporation in the state of its incorporation or its principal place of business.  Daimler AG v. Bauman, 571 U.S. 117, 137 (2014).  The Supreme Court has left open the possibility that, in an "exceptional case," a corporation's operations in another state "may be so substantial and of such nature as to render the corporation at home in the State."  Id. at 139 n.19.  For example, a company's relocation to Ohio from the Philippines during the Second World War was an "exceptional case."  See id.; Perkins v. Benguet Consol. Min. Co., 342 U.S. 437, 447-449 (1952).

6

Plaintiffs' argument that the Court has general jurisdiction over Chicago Title is not well taken. Plaintiffs argue that "[t]he fact that Chicago Title continuously and systematically enters contracts with parties from multiple states for pecuniary gain renders it essentially at home in such states, including Tennessee." (D.E. No. 17, 9.) A court has general jurisdiction over a corporation in the state in which it is incorporated or has its principal place of business. In an "exceptional case," its business operations in another forum render the corporation at home in that state. Daimler, 517 U.S. at 137-139. Chicago Title is incorporated in Illinois, and its principal place of business is in Florida. (D.E. No. 1; D.E. No. 1-3.) Plaintiffs' conclusory argument that Chicago Title enters into contracts with parties from multiple states, including Tennessee, does not demonstrate an exceptional circumstance that shows Chicago Title is at home in Tennessee. The Court does not have general jurisdiction over Chicago Title.

### 2.   Specific Jurisdiction

Federal courts decide specific personal jurisdiction based on the law of the forum state and the limits of due process. CompuServe, 89 F.3d at 1262. Under Tennessee's long-arm statute, personal jurisdiction extends to nonresident corporations "as to any action or claim for relief arising from" "[t]he transaction of any business within this state;" "[a]ny tortious act or

omission within this state;" "[e]ntering into any contract . . . located within this state at the time of contracting;" and "[a]ny basis not inconsistent with the constitution of this state or the United States[.]" Tenn. Code Ann. § 20-2-214. Tennessee's long-arm statute is interpreted to extend to the limits of the Due Process Clause of the United States Constitution. Intera Corp. v Henderson, 428 F.3d 605, 616 (6th Cir. 2005). The jurisdictional limits of Tennessee and the United States Constitution "are identical." Id.

The Sixth Circuit relies on the three Mohasco factors to determine specific personal jurisdiction. See Intera, 428 F.3d at 615. In Mohasco, the court said:

> From these two cases, three criteria emerge for determining the present outer limits of in personam jurisdiction based on a single act. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

All three requirements must be met for personal jurisdiction to be proper. LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1303 (6th Cir. 1989). Purposeful availment is

"essential" to personal jurisdiction.  Intera, 428 F.3d at 616.
This requirement protects defendants from "being hailed into a
jurisdiction by virtue of 'random,' 'fortuitous,' or
'attenuated' contacts."  Id. at 616, (quoting Calphalon Corp. v.
Rowlette, 228 F.3d 718, 722 (6th Cir. 2000)).  Purposeful
availment is satisfied where a defendant "has created 'continuing
obligations' between himself and the residents of the forum . .
. ."  Air Prod., 503 F.3d at 551 (quoting Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 476 (1985)).  Physical presence is not
required.  Air Prod., 503 F.3d at 551.

The "mere existence" of a contract is not sufficient to
confer personal jurisdiction over a nonresident defendant.
Calphalon, 228 F.3d at 722.  The court must consider the prior
negotiations, contemplated future consequences, terms of the
contract, and the actual course of dealings to determine whether
the defendant purposefully availed itself of the privilege of
acting in the forum state.  Id.  The focus is on the quality,
not the quantity, of contact between the defendant and the forum
state.  Id.  That one party to a contract is a Tennessee entity
does not establish purposeful availment under Tennessee law.
TopRx, Inc. v. Cedarburg Pharms., Inc., No. 08-2588, 2009 WL
10664425 (W.D. Tenn. June 10, 2009) (citing Burger King, 471
U.S. at 478; Calphalon, 227 F.3d at 722).  In actions against
fiduciaries, the court considers whether the defendant fiduciary

9

initiated the fiduciary relationship.  Compare Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999) (finding no personal jurisdiction where the will of a third-party created the fiduciary relationship) with In re Trade Partners, Inc., Invs. Litig., 532 F. Supp. 2d 904, 913 (W.D. Mich. 2007) (finding personal jurisdiction where the defendant escrow agent participated in marketing within the forum).

In their response to Chicago Title's Motion, Plaintiffs argue that "Chicago Title purposefully availed itself of the privilege of acting in Tennessee, or causing a consequence in Tennessee, by entering into an Escrow Agreement with [Porter Casino], a Tennessee company, accepting $1,500,000 from Plaintiffs for the benefit of [Porter Casino], and directly generating profit as a result."  (D.E. No. 17.)  Although Plaintiffs have attached exhibits to their response, those exhibits fail to support Plaintiffs' argument for specific jurisdiction.[1]

---

[1] Plaintiffs' response includes the following exhibits: 1) Declaration of Jaymen Chavda, Georgia Gaming's attorney, stating that on September 15, 2017, he wired funds to Chicago Title to be held in escrow and notified Thomas F. Fricke, Porter Casino's attorney, about the transaction (D.E. No. 17-1); 2) September 15, 2017 notification Chavda sent to Fricke (D.E. No. 17-1); 3) Escrow Agreement among Porter Casino, Majestic Star, and Chicago Title (D.E. No. 17-2); 4) February 9, 2018 letter from Chad Young, Georgia Gaming's attorney, notifying Chicago Title's representative of Georgia Gaming's claim to the $1,500,000.00 held in escrow (D.E. No. 17-3).

Plaintiffs have failed to make a prima facie showing of purposeful availment. That Porter Casino was a party to the Escrow Agreement and that Chicago Title performed under the Agreement are insufficient to establish purposeful availment under Tennessee law. See TopRx, 2009 WL 10664425, at *5. The request for the Escrow Agreement came from Majestic Star, an Indiana limited liability company, through its attorney in Illinois. (D.E. No. 11, ¶¶ 4-5.) Chicago Title did not initiate the disputed fiduciary relationship. Chicago Title did not negotiate the terms of the Escrow Agreement. (Id. ¶ 5.) The property at issue was in Mississippi. (Id. ¶ 4.) Plaintiffs transferred funds from their law firm's trust account in Atlanta, Georgia, to Chicago Title's Bank of America account.[2] (D.E. No. 17-1, ¶ 4.)

Chicago Title's only direct contact with Porter Casino was through Porter Casino's counsel, Thomas F. Fricke. (D.E. No. 11, ¶ 10-17.) In an email sent on February 8, 2018, Fricke asked Chicago Title to prepare a new escrow account, similar to the account established by the Escrow Agreement. (Id. ¶ 10.) No funds were placed in the new account, and there was no further contact between Fricke or Porter Casino and Chicago Title. (Id.)

---

[2] Chicago Title has no bank accounts in Tennessee. (D.E. No. 1-3, ¶ 9.)

11

Chicago Title has submitted the affidavit of Madeline G. M. Lovejoy, Corporate Legal Administrator, averring that Chicago Title does not have any employees, facilities, real estate, or personal property in Tennessee.  (D.E. No. 1-3, ¶ 8.)  Chicago Title is not registered to do business in Tennessee, has no registered agent in Tennessee, does not have any bank accounts in Tennessee, and does not file taxes in Tennessee.  (Id. at ¶¶ 7-10.)  Plaintiffs have not provided any affidavits or documentary evidence supporting the proposition that Chicago Title regularly does business in Tennessee.

ALTe, L.L.C. v. Quest Capital Investments is similar to the present case.  See ALTe, L.L.C. v. Quest Cap. Invs., Inc., No. 11-15077, 2012 WL 1893519 (E.D. Mich. May 23, 2012).  There, plaintiff, a Michigan corporation, brought suit in Michigan against its lender and its escrow agent for breach of an escrow agreement.  Id. at *1.  The escrow agent, a California corporation, moved to dismiss for lack of personal jurisdiction. Id.  The court found no purposeful availment.  Id.  The lender chose the escrow agent and drafted the terms of the escrow agreement.  Id.  Although the plaintiff signed the agreement in Michigan, the lender and the escrow agent signed in California. Id.  The escrow agent had no physical presence or property in Michigan and did not advertise, solicit, or regularly conduct business in Michigan.  Id.  The only communications between the

12

plaintiff and the escrow agent addressed deposit confirmations.
Id. at *5.  The alleged breach occurred in California, when the
escrow agent released the held funds.   Id. at *6.

In the present case, Majestic Star selected Chicago Title
as the escrow agent. (D.E. No. 10, ¶¶ 4,5.)  Majestic Star and
Chicago Title both executed the Escrow Agreement in Illinois.
(D.E. No. 1-4).  The terms of the Agreement were standard and
were not negotiated by any party. (Id. ¶ 5.)  Chicago Title has
no physical presence or property in Tennessee and is not
registered to do business in Tennessee.  (D.E. No. 1-3, ¶¶ 7,8.)
The communications between Chicago Title and Porter Casino were
de minimis.  (D.E. No. 10, ¶¶ 10-17.)  The alleged breach did
not occur in Tennessee.[3]

Chicago Title did not purposefully avail itself of the
privilege of acting in Tennessee.  The Sixth Circuit has
described the first criterion for specific jurisdiction,
purposeful availment, as "the sine qua non for in personam
jurisdiction."  Mohasco, 401 F.2d at 381-82. "[E]ach [Mohasco]
criterion represents an independent requirement, and failure to

---

[3] See Phillips Exeter, 196 F.3d at 291 (breach of a fiduciary duty
occurs in the forum where the fiduciary is located or where it fails
to perform); ALTe, 2012 WL 1893519, at *6 ("[T]he basis of this
lawsuit is the release of the deposit by Commercial Escrow to Quest,
which occurred in California, not Michigan. Accordingly, the Court
finds that Commercial Escrow has not purposefully availed itself of
acting within Michigan.").

meet any one of the three means that personal jurisdiction may not be invoked." <u>LAK, Inc.</u>, 885 F.2d at 1303. Because Plaintiffs have failed to make a prima facie showing of purposeful availment sufficient to satisfy the first criterion for specific jurisdiction, the Court lacks personal jurisdiction over Chicago Title.

### B.   Motion to Dismiss For Failure to State a Claim

Chicago Title's Motion to Dismiss for Failure to State a Claim is **DENIED AS MOOT.**

### C.   Third-Party Complaint

Chicago Title's Third-Party Complaint asserts a claim against Porter Casino for indemnity if Chicago Title is liable to Plaintiffs. (D.E. No. 31, ¶ 10.) A third-party complaint is dependent on the outcome of the main claim. <u>Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.</u>, 512 F.3d 800, 805 (6th Cir. 2008). A court has the discretion to dismiss a third-party claim after the original claims of the plaintiff are resolved. <u>Id.</u> at 805-806 ("[I]t is rare that a court renders judgment in favor of the defendant or dismisses the underlying action but nonetheless chooses to address a third-party claim."). Because Chicago Title's Third-Party Complaint is contingent on Chicago Title's liability to Plaintiffs and Plaintiffs' claim against Chicago Title is being dismissed, Chicago Title's Third-Party Complaint is **DISMISSED.**

**V.    Conclusion**

Because the Court lacks personal jurisdiction over Chicago Title, its Motion is **GRANTED.**  Plaintiffs' Complaint is **DISMISSED.**  Chicago Title's Third-Party Complaint against Porter Casino is also **DISMISSED.**

SO ORDERED this 22nd day of September, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE